**No. 24-3335**

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

_____

LISA BODENBURG, On Behalf Of Herself And All Others Similarly Situated,

*Plaintiff-Appellant*,

v.

APPLE INC.,

*Defendant-Appellee.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(CV-3:23-4409-TLT)

_____

**APPELLANT'S OPENING BRIEF**

_____

Roy A. Katriel
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Rd., Suite 201
Del Mar, CA 92014
Telephone: (619) 363-3333
e-mail: rak@katriellaw.com

Ralph B. Kalfayan
Ian D. Krupar
**THE KALFAYAN LAW FIRM**
2262 Carmel Valley Road, Suite 200
Del Mar, CA 92014
Telephone: (619) 232-0331
e-mail: ralph@rbk-law.com
        ian@rbk-law.com
*Counsel for Appellant Lisa Bodenburg*

# **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT……………………………………………..1

ISSUES PRESENTED FOR REVIEW…………………………………………2

STATEMENT OF THE CASE……………………………………………..…2

I.      APPLE'S iCLOUD LEGAL AGREEMENT PROVIDED FOR
        BODENBURG TO RECEIVE THE CLOUD STORAGE TIER
        SHE PAID FOR AS "ADDITIONAL STORAGE" TO THE 5 GB
        OF STORAGE SHE ALREADY WAS RECEIVING FOR FREE….…..2

II.     APPLE'S FULLY INTEGRATED FORM iCLOUD LEGAL
        AGREEMENT EXPRESSLY REFERENCED A SPECIFIC
        APPLE PRICE LIST DOCUMENT THAT ALSO MADE
        CLEAR THE "ADDITIONAL" NATURE OF THE STORAGE
        PURCHASED OVER THE 5 GB OF FREE STORAGE
        BODENBURG ALEADY HAD……………………………….…..…4

III.    BODENBURG'S PLEADING MADE PERTINENT
        ALLEGATIONS ABOUT THE CUSTOM IN THE INDUSTRY
        THAT CORROBORATTED HER INTERPRETATION OF
        APPLE'S iCLOUD LEGAL AGREEMENT…………………..………9

IV.     APPLE DID NOT PROVIDE THE STORAGE AMOUNTS
        IT CONTRACTED AND PROMISED TO DELIVER,
        LEADING TO BODENBURG'S SUIT………..……………………11

PROCEEDINGS AND DISPOSITION BELOW………………………………14

I.      APPLE'S MOTION TO DISMISS THE FAC IGNORED THE
        TERMS OF THE iCLOUD LEGAL AGREEMENT AND
        IMPROPERLY SOUGHT TO "INCORPORATE"
        EXTRANEOUS WEBSITE ADVERTISEMENTS……………..……14

II.      THE DISTRICT COURT ERRONEOUSLY DISMISSED
         WITH PREJUDICE ALL COUNTS OF THE FAC AFTER
         IMPROPERLY CONSIDERING APPLE'S EXTRANEOUS
         ADVERTISING DOCUMENTS OVER THE GOVERNING
         LANGUAGE OF THE iCLOUD LEGAL AGREEMENT……..….19

SUMMARY OF ARGUMENT…………..……………………………………21

STANDARD OF REVIEW………………..…………………………………..23

ARGUMENT……………………..……………………………………………24

I.       DISMISSAL OF BODENBURG'S BREACH OF CONTRACT
         CLAIM WAS REVERSIBLE ERROR………………….…………24

    A.  The District Court Failed To Consider The Plain And Ordinary
        Meaning Of The Terms Of Section I.C Of The iCloud Legal
        Agreement………………………………………….…………24

    B.  The District Court's Error In Favoring Extraneous Apple Website
        Advertisements Over The Plain Language Of The iCloud Legal
        Agreement Was Especially Acute In Light Of The Fully Integrated
        Nature Of Apple's Form Contract…………………………….29

    C.  The District Court's End-Run Around The Parol Evidence Rule
        By Resort To Incorporation By Reference Of Ads Neither
        Bodenburg Nor The iCloud Legal Agreement Referenced Was
        Plainly Wrong……………………………………………...34

    D.  The Main Authority The District Court Relied On For Its
        Ruling Is Wholly Inapplicable Here………………….………39

    E.  Even If The District Court Found The iCloud Legal
        Agreement's Language Ambiguous Or Susceptible To
        Several Interpretations, That Would Not Lead To Dismissal……….41

    F.  Regardless, Even The Apple Advertisements Impermissibly
        Considered By The District Court Do Not Lead To Dismissal……….44

II.       DISMISSAL OF BODENBURG'S STATUTORY CLAIMS WAS ERROR…………………………………...…………………..45

A. The District Court Erred In Its Application Of The "Reasonable Consumer" Test To The CLRA, FAL, and UCL Claims……..………47

B. The District Court Erred In Incorporating By Reference The Extrinsic Apple Advertisements And Relying On Them To Dismiss The Statutory Claims………………………….…………49

C. The District Court's Conclusion That Bodenburg Failed To Meet Heightened Pleading Standards Also Was Wrong……………..50

CONCLUSION………………………………………….……..52

CERTIFICATE OF COMPLIANCE……………………...…………54

# TABLE OF AUTHORITIES

**Cases:**

*Ballentine v. De Sylva*,
226 F.2d 623 (9th Cir. 1955)……………………………………………………27

*Brady v. Bayer Corp.*,
26 Cal. App.5th 1156 (2018)……………………………...……………………48-49

*Brawthen v. H & R Block, Inc.*,
28 Cal. App.3d 131 (1972)……………………………………………………40

*Building Industry Assoc. of the Bay Area v. City of San Ramon*,
4 Cal. App.5th 62 (2016)…………………………………...……………..28-29

*Charles v. City of Los Angeles*,
No. 10-57028, 2012 WL 4857194 (9th Cir. Oct. 15, 2012)………………………23

*Congdon v. Uber Tech Inc.*,
291 F. Supp.3d 1012 (N.D. Cal. 2018)…………………………………………42

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012)……………………………………….…………23

*Dinan v. Sandisk LLC*,
No. 18-cv-05420-BLF, 2019 WL 2327923 (N.D. Cal. May 31, 2019),
*aff'd* 844 Fed. Appx. 978 (9th Cir. 2021),………………………….…………39

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
326 F.R.D. 592 (N.D. Cal. 2018)………………………………………………46

*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*,
109 Cal. App. 4th 944 (2003)…………………………………….……………26

*Global Network Communications, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006)……………………………………………………37

*In re Immune Response Sec. Litig.*,
375 F. Supp.2d 983 (S.D. Cal. 2005)……………………………………………..37

*In re Pacific Gas and Elec. Co.*,
NC–04–1574–MaMcB, 2005 WL 6960224 (9th Cir. Dec. 28, 2005)……………32

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)………………………………………………35, 36-37

*Leep v. American Ship Mgmt.*, LLC,
126 Cal. App.4th 1028 (2005)………………………………………………...38-39

*Morris v. Allstate Ins. Co.*,
16 F. Supp.3d 1095 (C.D. Cal. 2014)………………………………….…………27

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006)………………………………………….………33

*Schlitz v. Akers*,
292 P. 463 (Cal. 1930)……………………………………………………………27

*Sullivan v. Massachusetts Mutual Life Ins. Co.*,
611 F.2d 261 (9th Cir. 1979)………………………………………………...40-41

*Sussex Financial Enterprises, Inc. v. Bayerische Hypo-Und Vereinsbank AG*,
460 Fed. Appx. 709 (9th Cir. 2011)………………………………….………33

*Tahoe Nat'l Bank v. Phillips*,
4 Cal.3d 11 (1971)……………………………………………………..41-42

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016)………………………………………..…………23

*Whiteside v. Kimberly Clark Corp.*,
108 F.4th 771 (9th Cir. 2024)………………………………...……..47, 48, 49-50, 52

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008)……………………………………………………49

*Zuchella v. Olympusat, Inc.*,
No. 19-7335-DSF, 2021 WL 8317026 (C.D. Cal. Oct. 5, 2021)…………………28

**Statutes:**

Cal. Civ. Code, § 1625………………………………………………………33

Cal. Civ. Proc. Code, § 1856(a)………………………………………………..32

## JURISDICTIONAL STATEMENT

On November 9, 2023, Plaintiff-Appellant Lisa Bodenburg ("Bodenburg"), a resident of California (ER-106, ¶ 19), filed her operative First Amended Class Action Complaint ("FAC") against Defendant-Appellee Apple Inc. ("Apple"), a California corporation headquartered in California. (ER-107, ¶ 21). Bodenburg sought to represent a class of "subscribers within the United States who during the Class Periods paid for an Apple iCloud subscription (also called "iCloud+" since June 2021)." ER 114, ¶ 37. Bodenburg's FAC alleged claims for: breach of contract (ER-116 – ER-118, ¶¶ 44-52); violations of California's Consumer Legal Remedies Act ("CLRA") (ER-118 – ER-119, ¶¶ 53-58); violations of California's False Advertising Law ("FAL") (ER-119 – ER-121, ¶¶ 59-65); and, violations of California's Unfair Competition Law ("UCL") (ER-121 – ER-122, ¶¶ 66-71). The district court had subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the FAC pled a putative class of diverse nationwide citizenship than Apple's California citizenship, and the amount of recovery sought, exclusive of costs and prejudgment interest, exceeded $ 5 million. ER-105 – ER-106, ¶ 15.

On May 8, 2024, the district court granted Apple's motion for judicial notice and incorporation by reference and granted with prejudice Apple's motion to dismiss all counts of the FAC. ER-2 – ER-20. Bodenburg filed her timely notice of appeal

on May 24, 2024.   This Court has jurisdiction over Bodenburg's appeal under 28 U.S.C. § 1291 because the district court's dismissal with prejudice of all counts of the FAC was a "final decision" within the meaning of that statute.

## ISSUES PRESENTED FOR REVIEW

Did the district court err in dismissing with prejudice all counts of the FAC?

A subsidiary issue is whether the district court erred in considering documents outside the pleading under the doctrine of incorporation by reference.

Pertinent statutory provisions are reprinted in the separately bound Addendum.  *See* 9th Cir. Rule 28-2.7.

## STATEMENT OF THE CASE

This is a breach of contract case alleging Apple's breach of its iCloud Legal Agreement as well as derivative statutory claims for violations of the CLRA, FAL, and UCL.  Bodenburg alleged that Apple did not deliver the cloud storage capacity for which she and class members paid and that Apple contracted to deliver.  Instead, in each instance, Apple delivered 5 GB less of cloud storage than what it had promised in exchange for receiving class members' iCloud monthly subscription payments. ER-102, ¶ 2.

**I.      APPLE'S iCLOUD LEGAL AGREEMENT PROVIDED FOR BODENBURG TO RECEIVE THE CLOUD STORAGE TIER SHE PAID FOR AS "ADDITIONAL STORAGE" TO THE 5 GB OF STORAGE SHE ALREADY WAS RECEIVING FOR FREE.**

Apple's iCloud service provides users the ability to store their digital data on

remote servers, as opposed to keeping the data stored merely on the users' devices. ER-102, ¶ 3. This is commonly referred to as "storing on the cloud." *Id*. Each Apple device owner receives 5 GB of iCloud storage for free. Neither a subscription plan nor a payment is required to obtain this free 5 GB of storage, which is provided to all Apple device owners. *Id*. Separately, Apple also sold iCloud subscriptions to the putative class members by which Apple represented to class members that, in exchange for them paying Apple monthly subscription fees, Apple would provide them with "additional" cloud storage beyond the free 5 GB of storage automatically provided to all. *Id.*, ¶ 4. Apple called this additional paid-for cloud storage "iCloud+" as distinguished from the free 5 GB of storage Apple already provided to all its device owners, which Apple called "iCloud." This additional cloud storage would provide added capacity up to certain limits (measured in gigabytes (GB) or terabytes (TB)) depending on the subscription plan purchased. ER-102, ¶ 4.

All this was memorialized in the iCloud Legal Agreement, a fully integrated written form contract that Apple exclusively drafted with no input from Bodenburg or class members. *See* ER-124 – ER-141. The terms governing Apple's provisioning of iCloud are set forth in the iCloud Legal Agreement drafted by Apple. As the iCloud Legal Agreement explains:

> Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages. ***Additional storage*** *is available for purchase*, as described below.

ER-126, § I.C (emphasis added).

**II.     APPLE'S FULLY INTEGRATED FORM iCLOUD LEGAL AGREEMENT EXPRESSLY REFERENCED A SPECIFIC APPLE PRICE LIST DOCUMENT THAT ALSO MADE CLEAR THE "ADDITIONAL" NATURE OF THE STORAGE PURCHASED OVER THE 5 GB OF FREE STORAGE BODENBURG ALEADY HAD.**

The iCloud Legal Agreement identifies by a specific website URL internet domain address the Apple price list document that sets forth the prices Apple charges for the three paid iCloud+ subscription tiers. The iCloud Legal Agreement expressly refers to and incorporates this webpage price list into the iCloud Legal Agreement, stating that: "For details about plans and pricing, please visit https://support.apple.com/en-us/HT20138." *See* ER-131, ¶ III.A. That domain address would bring up Apple's price list for its iCloud and paid iCloud+ offering and is the only iCloud-related website referenced by, and incorporated in, the iCloud Legal Agreement. *See* ER-142 – ER-153. No other Apple iCloud websites or advertisements form part of, or are linked to, the iCloud Legal Agreement.

When a user clicked on the foregoing internet domain address referenced in the iCloud Legal Agreement, she was directed to an Apple price list for iCloud+, which provides the following content:

-4-

# iCloud+ plans and pricing

When you sign up for iCloud, you automatically get 5GB of free storage. If you need more iCloud storage or want access to premium features, you can upgrade to iCloud+.

## About iCloud+

iCloud+ is Apple's premium cloud subscription. It gives you more storage for your photos, files, and backups, and additional features* available only to subscribers:

### iCloud+ with 50GB storage

- 50GB of storage
- iCloud Private Relay
- Hide My Email
- Custom Email Domain
- HomeKit Secure Video support for one camera

Share everything with up to five other family members.

### iCloud+ with 200GB storage

- 200GB of storage
- iCloud Private Relay
- Hide My Email
- Custom Email Domain
- HomeKit Secure Video support for up to five cameras

Share everything with up to five other family members.

### iCloud+ with 2TB storage

- 2TB of storage
- iCloud Private Relay
- Hide My Email
- Custom Email Domain
- HomeKit Secure Video support for an unlimited number of cameras

Share everything with up to five other family members.

You can upgrade to iCloud+ from your iPhone, iPad, iPod touch, Mac, or PC. After you upgrade, you'll be billed monthly.[1] See the monthly pricing and plans per country or region below.

* Not all features are available in all countries or regions. Without access to your IP address, some websites may require extra steps to sign in or access content after you turn on iCloud Private Relay. HomeKit Secure Video requires a supported iCloud

iCloud+ pricing

- North America, South America, Latin America, and the Caribbean
- Europe, the Middle East, and Africa
- Asia Pacific

North America, South America, Latin America, and the Caribbean

. . . .

United States[4] (USD)
**50GB**: $0.99
**200GB**: $2.99
**2TB**: $9.99

-5-

ER-142 – ER-153 (attached as Ex. 2 to FAC); *see also* ER-108 – ER-109, ¶ 25; ER-109, ¶ 26 (pasting the same in body of FAC).

Apple's price list itemizes the following three subscription plans in the United States: for a monthly payment of $0.99, a subscriber is to receive from Apple 50 GB of iCloud+ storage; for a monthly payment of $2.99, a subscriber is to receive from Apple 200 GB of iCloud+ storage; for a monthly payment of $9.99, a subscriber is to receive from Apple 2 TB of iCloud+ storage. *See* ER-145.

The paid cloud storage Apple would provide in exchange for the monthly subscription payments it received from the paying subscriber putative class members was to be in addition to the 5 GB of free storage already provided to all Apple devices. To underscore the additional nature of this storage, the Apple price list adopts this distinction, informing Bodenburg that:

> When you sign up for iCloud, you automatically get 5GB of free storage. If you need more iCloud storage or want access to premium features, you can upgrade to iCloud+.

ER-144.

Nothing in the body of the iCloud Legal Agreement or the price list that agreement references remotely informs consumers that if they elected to pay for an upgraded iCloud+ subscription, the 5 GB of free iCloud storage they already had with no subscription or payment would be taken away. Instead, the price list and

-6-

iCloud Legal Agreement conveyed the opposite, or at least that was a reasonable interpretation to be understood from the document. Everyone obtains 5 GB of cloud storage from a product Apple labels "iCloud" that is provided to all Apple device owners. In addition, if one pays for a subscription plan, one can also get a separate product, called "iCloud+" under which, in exchange for a monthly payment of $2.99, the subscriber would receive 200 GB of iCloud+ storage (or, in exchange for $0.99 one would receive 50 GB of iCloud+ storage).

Underscoring that the pricing charged and paid was for the *incremental* 200 GB of iCloud+ storage and not for the *total* storage inclusive of the 5 GB of free iCloud storage, the Apple price list for the United States also itemized what a user would receive in specific exchange for her payment:

United States (USD)
**50 GB:** $0.99
**200GB:** $2.99
**2TB:** $9.99

ER-145.

Apple's price list can be accurate only if, in exchange for $2.99 per month, Bodenburg was to get the 200 GB of iCloud+ storage in addition to the 5 GB of iCloud storage she already had from Apple for free. Otherwise, if the 200 GB was to be inclusive of the already existing 5 GB of free iCloud storage Bodenburg already had, the correct price list should have shown that the monthly payment of $2.99 was

in exchange for only 195 GB of iCloud+ storage because the additional 5 GB of storage already was hers for free.

A final part of Apple's form iCloud Legal Agreement was its ironclad integration clause that made that contractual document the sole governing agreement between the parties to the exclusion of all other representations or agreements. Apple set forth the integration clause towards the end of the iCloud Legal Agreement it drafted:

> Entire Agreement
>
> *This Agreement constitutes the entire agreement bet*ween you and Apple, *governs your use of the Service, and completely replaces any prior agreements* between you and Apple in relation to the Service.

ER-140, § X.C (emphasis added).

But well before this unambiguous clause, Apple began the very first paragraph of the iCloud Legal Agreement with a similar recitation. In the only part of the document that was set apart by full capital letters, Apple introduced its iCloud Legal Agreement with the following preamble:

> THIS LEGAL AGREEMENT BETWEEN YOU AND APPLE GOVERNS YOUR USE OF THE iCLOUD, SOFTWARE, SERVICES, AND WEBSITES (COLLECTIVELY REFERRED TO AS "THE SERVICE"). IT IS IMPORTANT THAT YOU READ AND UNDERSTAND THE FOLLOWING TERMS. BY CLICKING 'AGREE,' YOU ARE AGREEING THAT THESE TERMS WILL APPLY IF YOU CHOOSE TO ACCESS OR USE THE SERVICE.

ER-126 (first paragraph) (capitalization in original, underlining added).

Apple also included a governing law clause to its form iCloud Legal Agreement: "Except to the extent expressly provided in the following paragraph, this Agreement and the relationship between you and Apple shall be governed by the laws of the State of California, excluding its conflicts of law provisions. ER-140, § X.B.

## III. BODENBURG'S PLEADING MADE PERTINENT ALLEGATIONS ABOUT THE CUSTOM IN THE INDUSTRY THAT CORROBORATTED HER INTERPRETATION OF APPLE'S iCLOUD LEGAL AGREEMENT.

To underscore her point that Apple's iCloud Legal Agreement promised that the cloud storage limits sold by Apple's iCloud+ paid subscription plans were in addition to the 5 GB of free cloud storage Apple already provided to all as part of its iCloud service, Bodenburg's FAC referenced how other cloud storage competitors in the industry advertised or represented their cloud storage offerings when they wished to convey that the opposite was true. Bodenburg's FAC pasted a Google advertisement. *See* ER-112 – ER-113, ¶ 33; ER-156.

Like Apple, Google provides some allotment of free cloud storage to all its account holders—in Google's case, this amounts to 15 GB of free cloud storage shared across the Google Drive, Gmail, and Google Photos offerings. For those Google account holders wishing more cloud storage than the 15 GB that Google offers for free to all, Google also provides a paid subscription plan called Google One that provides 100 GB or more (depending on subscription tier) of cloud storage.

Specifically, in addition to the 15 GB of cloud storage offered to all its account holders for free, Google offers the following Google One paid subscription plan levels: Google One Basic costing $0.49 per month for the first 3 months and $1.99 per month thereafter and offering 100 GB of cloud storage; Google One Standard costing $0.75 per month for the first 3 months and $2.99 per month thereafter and offering 200 GB of cloud storage; and, Google One Premium costing $2.49 per month for the first 3 months and $9.99 per month thereafter and offering 2 TB of cloud storage.  *See* ER-112, ¶ 32

Unlike Apple's contractual language and price list language, however, Google makes expressly clear that each of the foregoing paid subscription capacity limits represents the "total" storage provided inclusive of the free 15 GB of storage provided to all Google account holders, not "additional storage" to the free storage offered to all users.  Google's presentation of its Google One Premium product unambiguously explains that:

> Every Google Account comes with 15 GB of storage that's shared across Google Drive, Gmail, and Google Photos.  When you upgrade to Google One, your <u>total</u> storage increases to 100 GB or more depending on what plan you choose.

ER-112 – ER-113, ¶ 33 (emphasis added); *see also* ER-156 (Exhibit 3 to FAC, attaching Google advertisement for Google Drive and Google One).

Google's representation therefore showed that when actors in the cloud storage industry wanted to convey that the paid storage tier level would be inclusive

of the pre-existing cloud storage already offered for free, they (like Google) knew how to state so expressly and did so. To the extent that Apple's contractual language was susceptible to more than one interpretation and called for extrinsic evidence, this evidence of industry custom and practice was the type that should have been considered as part of any contract interpretation.

## IV. APPLE DID NOT PROVIDE THE STORAGE AMOUNTS IT CONTRACTED AND PROMISED TO DELIVER, LEADING TO BODENBURG'S SUIT.

Given the foregoing documentation and allegations, the lay of the land was clear. Bodenburg had been an Apple device owner and therefore obtained 5 GB of cloud storage for free under Apple's iCloud service offering. During the class period applicable to the FAC, she also subscribed to Apple's middle tier paid cloud storage subscription tier, known as iCloud+. *See* ER-106 – ER-107, ¶ 19. She paid Apple $2.99 monthly and, under the contract, was to receive the 5 GB of free iCloud storage she had been getting all along and the 200 GB of "[a]dditional storage" she opted to buy under the terms of Apple's iCloud Legal Agreement and price list. *Id*. Put differently, if $2.99 gave Bodenburg a right to obtain 200 GB of storage, as Apple's price list itemized, her total storage should have been those 200 GB for which she paid $2.99 plus the 5 GB of cloud storage she already had and was entitled to receive for free from Apple like all Apple device owners.

Apple did not deliver that. Instead, it provided Bodenburg only with the 200 GB of iCloud+ storage. ER-107, ¶ 19. But, under Section I.C of the iCloud Legal Agreement, that purchased subscription plan should have given Bodenburg 200 GB of "[a]dditional storage" to the 5 GB of free storage Apple already had allocated to her account. *See* ER-126, § I.C. After Bodenburg sued, Apple admitted it did not deliver the 200 GB of iCloud+ storage Bodenburg paid for as "*additional storage*" to her already existing 5 GB of storage she had but offered only 200 GB as the *total* storage amount. As Apple conceded: "The cloud storage is *not* accumulative." ER-90:24-25 (emphasis added).

Relying on the iCloud Legal Agreement, and specifically Section I.C of the contract and its referenced price list, Bodenburg sued for breach of contract as Count I of her FAC. *See* ER-116 – ER-118, ¶¶ 44-52. She alleged that Apple breached the iCloud Legal Agreement by shortchanging her and all putative class members 5 GB of cloud storage each month. ER-117, ¶ 48. Instead of providing the paid for storage tier limit that she and class members paid for as "additional storage" to the 5 GB of free iCloud storage, Apple offered these storage limits as the total storage capacity, effectively taking away the 5 GB of free storage Bodenburg and all class members were entitled to and were receiving for free. Instead of getting from Apple 205 GB (5 GB of the free iCloud storage she had all along plus the 200 GB of iCloud+ for

which she opted to pay), Apple delivered only 200 GB of total cloud storage per month. *Id*.

Count II of the FAC stated a claim for Apple's violation of the CLRA. *See* ER-118 – ER-119, ¶¶ 53-58. Therein, Bodenburg clarified that the conduct giving rise to the CLRA violation was the same as the one underlying her breach of contract claim. *See* ER-119- ER-118, ¶¶ 55-56. Count III of the FAC alleged a claim under the FAL. *See* ER-119 – ER-121,¶¶ 59-65. Here, Bodenburg claimed that because the iCloud Legal Agreement was publicly posted by Apple on the internet, it amounted to an advertisement within the meaning of the FAL. *See* ER-119 – ER-120, ¶¶ 60-61; ER-120, ¶ 63. She pled that Section I.C of the publicly posted iCloud Legal Agreement was false and misleading for the same reasons that she had pled that same language amounted to a breach of contract (*i.e.*, that Apple did not provide the paid for storage tier as "additional storage" to the 5 GB of free storage but as the total storage offered). ER-120, ¶ 61. She neither referenced nor identified any other Apple advertisement or representation as forming a basis of her FAL allegations. Last, at Count IV, Bodenburg alleged that the same foregoing allegations stated claims under California's UCL. ER-121 – ER-122, ¶¶ 66-71. Again, Bodenburg did not resort to any other representation or document beyond the iCloud Legal Agreement to state her derivative UCL claim.

## PROCEEDINGS AND DISPOSITION BELOW

**I.   APPLE'S MOTION TO DISMISS THE FAC IGNORED THE TERMS OF THE iCLOUD LEGAL AGREEMENT AND IMPROPERLY SOUGHT TO "INCORPORATE" EXTRANEOUS WEBSITE ADVERTISEMENTS.**

Apple moved to dismiss the FAC.  *See* ER-76 – ER-99.  Curiously, however, Apple's motion quoted no part of the iCloud Legal Agreement.  Nor did it even cite Section I.C of the contract, though this was the contractual term Bodenburg claimed Apple had breached.   Indeed, Apple's motion devoted all but two pages to Bodenburg's statutory claims, before adding a two-page section on her breach of contract count.

Equally troubling was that, while omitting any citation or quote of the actual contractual language, Apple's motion instead sought to present evidence of Apple website advertisements about its iCloud and iCloud+ offerings that Apple pasted onto the body of its motion.  While failing to quote any language of the iCloud Legal Agreement, much less the language of Section I.C that the FAC alleged Apple had breached, Apple's motion instead pasted the following extraneous website advertisement for iCloud of Apple's own making:



ER-87; *see also* ER-88:4-11 (listing Apple charts found in previous Apple website advertisements for iCloud that Apple was referring to in support of its motion).

These internet ads formed no part of the fully integrated iCloud Legal Agreement, were never referenced or identified in the contract, and formed no part of Bodenburg's FAC.

Despite this, Apple moved the district court to either take judicial notice of or consider these web ads as incorporated by reference to the FAC. *See* ER-88, n.3. To make that plea, Apple falsely represented to the district court that their consideration was necessary because:

> Unfortunately for Plaintiff, this contention does not change the fact that the iCloud Legal Agreement does not specify the storage amount that a consumer will receive for any iCloud+ subscription plan.

ER-95:1-3.

This was demonstrably false. Section III.A of the iCloud Legal Agreement directed users to the Apple price list that set forth the amount of storage to be provided in specific exchange for a monthly payment:

> For    details    about    plans    and    pricing,    please    visit
> https://support.apple.com/en-us/HT20138.

ER-131, ¶ III.A.

Through its failure to cite that (or any other) section of the iCloud Legal Agreement, Apple resorted to sleight of hand to have the district court consider extrinsic website advertisements about iCloud and iCloud+ whose language, instead

-16-

of the language in the fully integrated iCloud Legal Agreement, Apple claimed governed and supported Apple's interpretation.

Apple doubled down on this sleight of hand. At oral argument on Apple's motion to dismiss, its counsel remarkably claimed that it was the language of these extraneous Apple website advertisements that governed, as opposed to the language of the iCloud Legal Agreement. Apple urged the district court to refer to an advertisement nowhere referenced in the contractual documents instead of the terms of the iCloud Legal Agreement itself:

> **The ads are even more clear** that the storage at each available tier is the specific amounts that's listed. And I certainly think, Your Honor, that the most reasonable interpretation, if not the only reasonable interpretation *of a document like this one that says, we have these plan levels* – it's just like if you had a cellphone plan. You get a hundred minutes with this plan, you get 300 minutes with this other plan. That doesn't mean you get 300 minutes plus some other amount.
>
> There's no way to read **this document** reasonably consistent with the plaintiff's argument here. And their argument about 'in addition to,' or -- I walked the Court through these documents to show how distant the language here is from the 'in addition to' language that is the crux of at least their argument. *But again, I think the real crux is this document here*.

ER-30:10-30 (emphasis added).

Of course, "the real crux" should have been and was the iCloud Legal Agreement itself and not some extrinsic advertisement of Apple's own making that was neither identified nor referenced within the text of the iCloud Legal Agreement. Apple's concession that one must resort to that extrinsic advertising document to

obtain the result Apple urges only shows that the actual language of the iCloud Legal Agreement itself does not lead to the result Apple urged in its dismissal motion.

Bodenburg's statutory claims all relied only on the same iCloud Legal Agreement and conduct in breaching it. Despite this, Apple turned to the same extrinsic Apple advertisements it improperly put before the district court to argue that, given the content of those advertisements, Bodenburg could not meet the "reasonable consumer" test because reasonable consumers reading those ads were unlikely to be misled into believing that the paid-for iCloud+ storage was to be provided as "additional storage" to the 5 GB of free storage already provided to them through the iCloud allocation they already had with no subscription. ER-90:7 – ER-91:19.

The iCloud advertisements Apple placed before the district court do not lead to the conclusion that Apple urges and that the district court adopted. A more fundamental flaw in Apple's argument and the district court's ruling, however, is that it was error to consider these documents over the language of the governing iCloud Legal Agreement. It was the terms of Section I.C of the fully integrated iCloud Legal Agreement, the referenced Apple price list, and Apple's failure to abide by them, that the FAC contended amounted to violations of the CLRA, FAL, and UCL. That should have been the language to be considered. Neither Apple nor the district court

did so.  The district court's dismissal with prejudice of Bodenburg's claim therefore should be reversed.

**II.  THE DISTRICT COURT ERRONEOUSLY DISMISSED WITH PREJUDICE ALL COUNTS OF THE FAC AFTER IMPROPERLY CONSIDERING APPLE'S EXTRANEOUS ADVERTISING DOCUMENTS OVER THE GOVERNING LANGUAGE OF THE iCLOUD LEGAL AGREEMENT.**

Over Bodenburg's objection, the district court, held that the extrinsic website advertisements Apple presented that were neither mentioned in the iCloud Legal Agreement nor referenced in the FAC were to be considered as having been incorporated by reference into Bodenburg's pleading.  *See* ER-8:21 – ER-9:4; ER-11:15 – ER-12:3.  The district court then interpreted those ads, as opposed to the contractual language of the iCloud Legal Agreement, to hold that all the ads promised was that the paid iCloud+ subscription tiers would offer Bodenburg "more storage" than the 5 GB of iCloud storage Bodenburg and all others were getting for free.  *See* ER-14:1-11.  The court then held that because 200 GB was more than 5 GB, Apple had fulfilled its promise and there was no breach. ER-14:2.

The district court also went down the same wrong track when it considered Bodenburg's derivative statutory claims.  Again, the district court considered the language of Apple's extrinsic website advertisements instead of the language of the iCloud Legal Agreement that the FAC claimed formed the basis of all these statutory violations.   Relying on its interpretation of the advertisements, the district court

-19-

went on to hold that Bodenburg could not meet the "reasonable consumer" test because, in the district court's view, despite the contractual language's explicit reference to "additional storage" no reasonable consumer seeing Apple's advertisements would understand the ads to mean that the iCloud+ storage purchased would be provided in addition to the free 5GB of iCloud storage *See* ER-17:18 – ER-19:5.

To the district court, the iCloud Legal Agreement's language that it was "additional storage" to the free 5 GB of iCloud storage that was available for purchase, made no difference. Looking instead to the ads, the district court reasoned that "additional storage" only meant "more" storage and that Apple had fulfilled that representation because 200 GB of storage assuredly was "more" than the 5 GB of the free iCloud storage Bodenburg had been getting for free under the iCloud service.

That facile conclusion, however, resolved no part of the actual dispute. No party disputed that by paying $2.99 per month for her iCloud+ tier Bodenburg was entitled to receive more storage than the 5 GB of free storage she was getting under iCloud. The question over which the parties disagreed was how much more. Bodenburg's FAC alleged, by referring to the contractual language, that by making her purchase of iCloud+ middle tier subscription, she was to receive 200 GB more than the 5 GB of free storage. The plain meaning of "additional" being "in addition to" or supplementary (*see* Argument Section I.A *infra*) supported that conclusion.

Apple, on the other hand, argued that Bodenburg was entitled to receive only 195 GB more than the 5 GB of storage she already had been getting for free as part of the iCloud service provided to all Apple device owners. The district court's summary conclusion that Apple provided "more" storage and thereby fulfilled its contractual promise simply avoided resolving this actual dispute.

The district court dismissed all the claims of the FAC with prejudice. Bodenburg's appeal followed.

## SUMMARY OF ARGUMENT

The district court erred in dismissing with prejudice Bodenburg's breach of contract claim. Instead of engaging in the required interpretation of the terms of the iCloud Legal Agreement by resort to the plain and ordinary meaning of that contractual language, the district court looked to extraneous Apple advertisements that were neither identified in the iCloud Legal Agreement nor referenced in the FAC. The district court misapplied the doctrine of incorporation by reference to allow consideration at the pleadings stage of any and all Apple advertisements about iCloud and iCloud+ when the FAC and the claims asserted therein referenced and relied only on the iCloud Legal Agreement and the Apple price list document that agreement expressly identified.

The district court's misuse of the incorporation by reference doctrine to consider Apple's extrinsic advertisements was particularly acute given the ironclad

integration clause within the iCloud Legal Agreement that barred consideration of any documents outside the four corners of that written contract. Had the district court undertaken an interpretation of the governing iCloud Legal Agreement, as it should have, it could not have reached the dismissal result it did. Not only was reliance on the Apple advertisements instead of the Apple iCloud Legal Agreement wrong, but the content of the Apple advertisements does not support the meaning ascribed to it by the district court in any event. Worse yet, the principal legal authority on which the district court relied to dismiss the breach of contract count was wholly inapplicable because it did not even involve a contract, much less a fully integrated written agreement.

Dismissal of Bodenburg's statutory claims under the CLRA, FAL, and UCL was premised on many of the same flaws that plagued the district court's dismissal of the breach of contract count. The court improperly considered extrinsic Apple advertisements when the only document on which the FAC based its allegation of false or deceptive conduct was the iCloud Legal Agreement (including the price list referenced therein). Because the district court relied on the wrong document, it also reached the wrong conclusion when it held that Bodenburg's statutory claims failed to meet the "reasonable consumer" test. That much was confirmed just last month by this Court's latest decision on the "reasonable consumer" test as applied to CLRA, FAL, and UCL claims.

So too, the district court's assessment that Bodenburg's statutory claims failed to meet the heightened pleading standard also was wrong. The allegations of the FAC sufficiently itemized the who, what, where, and how details underlying these claims. Even if any such detail could be deemed missing (and it was not), there would be no basis to deny Bodenburg leave to amend.

For all these reasons, as detailed more fully below, the district court's order should be reversed.

## STANDARD OF REVIEW

The district court's dismissal of Bodenburg's FAC under Rule 12(b)(6) is reviewed de novo. *Charles v. City of Los Angeles*, No. 10-57028, 2012 WL 4857194, at *3 (9th Cir. Oct. 15, 2012). Generally, the denial of leave to amend a complaint is reviewed for an abuse of discretion, *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016), but where, as here, a complaint is dismissed with prejudice and leave to amend is denied as futile, the decision to deny leave is reviewed *de novo. See id.* A district court's decision to incorporate by reference documents into a complaint is reviewed for abuse of discretion. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

**ARGUMENT**

**I.    DISMISSAL OF BODENBURG'S BREACH OF CONTRACT CLAIM WAS REVERSIBLE ERROR.**

**A. The District Court Failed To Consider The Plain And Ordinary Meaning Of The Terms Of Section I.C Of The iCloud Legal Agreement.**

Because Apple admitted that the paid storage tier limit it provided was "not accumulative" to the 5 GB of storage Bodenburg and all Apple device owners already were receiving for free without the need to resort to any subscription plan (ER-90:25), her breach of contract claim turned on a single pertinent inquiry.  The sole question for the district court to resolve was whether the fully integrated form iCloud Legal Agreement that provided that:

> Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages.  ***Additional storage*** *is available for purchase*, as described below.   ER-126, § I.C (emphasis added)

could plausibly be read to mean that any cloud storage tier for which a consumer chose to pay would be offered "in addition to" the 5 GB of iCloud storage the consumer already was receiving for free, as opposed to being offered "instead of" that 5 GB of free storage (as Apple's motion argued).  The answer would have been straightforward if the district court actually had sought to interpret the plain terms of the iCloud Legal Agreement.  Instead of doing that, however, the district court turned to reviewing unrelated website advertisements in which Apple made certain

-24-

representations in chart form about its paid subscription iCloud+ plans and its free 5 GB of cloud storage.

The district court's interpretation of Apple's separate website advertisements was wrong, but the more salient antecedent point is that those website advertisements (completely extraneous to the iCloud Legal Agreement and nowhere referenced within it) were the wrong documents for the district court to have interpreted. Faced with the iCloud Legal Agreement's unwavering recitation that that contractual document—and that document alone—provided the terms governing Apple's provision of iCloud and iCloud+ to Bodenburg and class members, the Court was wrong to eschew the plain terms of the iCloud Legal Agreement and resort instead to wholly extrinsic Apple website advertisements.

The task was clear. Faced with dueling interpretations of Apple's obligations to provide storage as part of the iCloud service, the district court was to look to the iCloud Legal Agreement and no further to adjudicate the contractual dispute. The iCloud Legal Agreement, in turn, spoke to the very question raised by Bodenburg's FAC. Section I.C of the Agreement stated that:

> Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages. ***Additional storage** is available for purchase*, as described below.

ER-126, § I.C (emphasis added).

California law provides the straightforward tools by which interpretation of that contractual term is to be undertaken. "California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) (internal quotations and citations omitted). The parties disputed the meaning of the term "[a]dditonal storage." Apple contended that "additional storage" bought as part of any of the three iCloud+ subscription tiers supplants and is provided instead of the 5 GB of free iCloud storage that Plaintiff and all class members already were receiving for free (*i.e.,* this storage "is not accumulative" to the free 5 GB of storage Plaintiff and all Apple users already had). Under Apple's interpretation, one could either get the 5 GB of free iCloud storage or opt to get, for example, the 200 GB of storage for $2.99 per month, but not both. *See* ER-90:25. Bodenburg, on the other hand, maintained that "additional" storage means just that—storage *in addition to* the 5 GB of free storage Plaintiff already had. *See* ER-103, ¶ 7.

To determine which meaning was the correct interpretation of the iCloud Legal Agreement, the first step should have been to resort to the plain meaning and definition of the contractual terms used (*i.e.,* "additional storage"). Had the district court done that, the result would have been unavoidable.

The plain and common meaning of the governing contract term "additional" is precisely the meaning Bodenburg ascribed to it. That is confirmed by authoritative English language dictionaries, a longstanding practice common under California law when a court seeks to determine the meaning of contractual language. *See Schlitz v. Akers*, 292 P. 463, 464 (Cal. 1930) (resolving contract interpretation dispute by noting that "In Webster's New International Dictionary the term 'shale' is defined as 'a rock formed by the consolidation of clay, mud or silt, having a finely stratified or laminated structure.'"); *Ballentine v. De Sylva*, 226 F.2d 623, 633, n.11 (9th Cir. 1955) ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed and clearly the ordinary and popular sense in which the word child (the singular of children) is understood is as defined in the dictionaries."); *see also Morris v. Allstate Ins. Co.*, 16 F. Supp.3d 1095, 1102, n.3 (C.D. Cal. 2014) ("[I]nterpreting the contract is a legal question, and applying the dictionary meaning to the ordinary word 'windstorm' is wholly appropriate.").

The Oxford English Dictionary defines the term "additional" as follows:

**additional, adj. & n.**

That is ***in addition to something else; added, extra, supplementary***. Also used predicatively, with to (frequently in postmodifying verbless clause).

available at https://www.oed.com/search/dictionary/?scope=Entries&q=additional

(last visited Aug. 20, 2024) (emphasis added).

California federal and state courts have ascribed that same meaning to the term "additional" in interpreting legal documents or statutory language. For example, in construing the meaning of a court order that turned on the import of the word "additional," the United States District Court for the Central District of California straightforwardly explained that:

> Because plaintiff at that time had represented that all documents on the backup had been produced or listed in her privilege log, the Court limited the neutral expert's task to determining whether the backup contained any additional data or information that could be recovered -- *meaning data/information that was separate from, or in addition to, the documents that plaintiff had already produced*. The expert would then provide a written report to the parties explaining whether any additional data or information was located, and if so, the nature of the data/information, without disclosing the specific content of such data/information.

*Zuchella v. Olympusat, Inc.*, No. 19-7335-DSF, 2021 WL 8317026, at *2 (C.D. Cal. Oct. 5, 2021) (underlining in original, bold and italics added).

Another California court made it even more clear. In interpreting statutory language, the California Court of Appeal contrasted the dictionary meaning of the term "additional" as differing from the term "supplant" (which is the meaning Apple seeks to ascribe):

> Our understanding of the statutory language is consistent with the dictionary definitions of 'additional' and 'supplant' that were presented by the City to the trial court, and recognized by the Association as being

probative, though not dispositive, of the meaning of the statute. ***The Oxford Dictionaries define 'additional' as '[a]dded, extra, or supplementary to what is already present or available.'*** (http://www.oxforddictionaries.com/us/definition/american_english/ad ditional [as of Oct. 13, 2016].) ***Merriam–Webster defines 'supplant' as 'to take the place of and serve as a substitute for especially by reason of superior excellence or power.'*** (Meriam-Webster Dict. online, http://merriam-webster.com/dictionary/supplant [as of Oct. 13, 2016].).

*Building Industry Assoc. of the Bay Area v. City of San Ramon*, 4 Cal. App.5th 62, 76 (2016) (emphasis added).

Resort to the natural and plain dictionary meaning of the term "additional" when interpreting of the iCloud Legal Agreement's term:

Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages. ***Additional storage** is available for purchase*, as described below. (ER-126, § I.C)

therefore would mean that the "[a]dditional storage [that] is available for storage" is "additional to" that which "[y]our Account [already] is allocated." *Id.*

Remarkably, however, when Apple moved to dismiss the FAC, its filing did not even quote the iCloud Legal Agreement, much less Section I.C (the contract term alleged to have been breached). Instead, Apple pasted onto its motion copies of extrinsic Apple website ads that made certain representations about the iCloud free storage and iCloud+ paid subscription plan storage tiers. *See* ER-87 (pasting copy of Apple advertisement). These websites formed no part of the iCloud Legal Agreement and were nowhere referenced within it.

That misdirection continued during Apple's oral argument presentation. Instead of interpreting the iCloud Legal Agreement, Apple's counsel informed the district court that resolution of Bodenburg's breach of contract claim turned on a *separate Apple website advertisement* that was nowhere referenced in the iCloud Legal Agreement (the same website advertisement Apple pasted onto its motion and for which it sought judicial notice). As Apple's counsel argued:

> **The ads are even more clear** that the storage at each available tier is the specific amounts that's listed. And I certainly think, Your Honor, that the most reasonable interpretation, if not the only reasonable interpretation **of a document like this one that says, we have these plan levels** – it's just like if you had a cellphone plan. You get a hundred minutes with this plan, you get 300 minutes with this other plan. That doesn't mean you get 300 minutes plus some other amount.
>
> There's no way to read **this document** reasonably consistent with the plaintiff's argument here. And their argument about 'in addition to,' or -- I walked the Court through these documents to show how distant the language here is from the 'in addition to' language that is the crux of at least their argument. **But again, I think the real crux is this document here**.

ER-30:10-24 (emphasis added).

Even the unrelated website advertisement pages that Apple (improperly) referred the district court to do not support the interpretation Apple advanced, but the more basic flaw is that in this breach of contract action, the document to have been interpreted is the iCloud Legal Agreement, the actual contract, not some extraneous website advertisement. Bodenburg's counsel made that point:

> I was surprised a little bit to hear that Apple is now saying that really the governing document, the one that gets them there, is page 4 and not the agreement, when, as we just went through it, Apple actually informed the consumers that the agreement is all that they should look to.

ER-40:10-14.

Turning to the actual language of the governing iCloud Legal Agreement, Bodenburg's counsel explained why no plain reading of the contractual language could support Apple's urged result:

> Now, going also to the slide, the previous page, page 2 of the slide, when they prepared this slide, which is a snapshot of the agreement, they highlighted in, or they boxed out the sentence that says:
>
> 'Additional storage is available for purchase as described below.' But what they didn't put in the box is the context in which this arose. They took out from the box the sentence immediately preceding it, which reads as follows:
>
> 'Your account is allocated 5 gigabytes of storage capacity, as described in the iCloud feature pages.' Then they say: 'Additional storage is available for purchase as described below.'
>
> And so if I wanted to find out what this agreement means, the plain language governs, you go to the dictionary definition of 'additional.' It's not 'more.' 'Additional' means in 'addition to, extra, supplementary.' The meaning they want to ascribe to that term is it 'supplants it, it replaces the 5 gigabytes.' That's not what 'additional' means, and they haven't pointed to any dictionary definition that gets them there, much less some slide or the agreement.

ER-41:24 – ER-42:17.

The district court, however, took Apple's bait. Instead of resting its decision on the iCloud Legal Agreement, it looked to the extraneous Apple website ads that

-31-

Apple urged it to consider.   Its dismissal of the breach of contract claim should be reversed.

### B. The District Court's Error In Favoring Extraneous Apple Website Advertisements Over The Plain Language Of The iCloud Legal Agreement Was Especially Acute In Light Of The Fully Integrated Nature Of Apple's Form Contract.

The district court's reliance on extraneous Apple website ads instead of the language of the iCloud Legal Agreement was error.  That error was particularly acute in the context of the iCloud Legal Agreement's unambiguous integration clause that admonished Bodenburg and all Apple subscribers that they should look only to the iCloud Legal Agreement.   Given this, California's parol evidence rule bars consideration of the website ads Apple and the district court relied on.

"Under California law, a written contract supersedes all prior and contemporaneous agreements concerning the same subject matter, and if the writing is intended by the parties as the final expression of their agreement, it cannot be contradicted by parol evidence." *In re Pacific Gas and Elec. Co.*, NC–04–1574–MaMcB, 2005 WL 6960224, at *2 (9th Cir. Dec. 28, 2005) (quotations and cites omitted).  That axiom of contract interpretation is codified under Section 1856(a) of California's Code of Civil Procedure, which states that "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement." Cal. Civ. Proc. Code § 1856(a).

-32-

So too, Section 1625 of California's Civil Code holds that, "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Cal. Civil Code, § 1625.

Faced with similar or even less clear contractual integration clauses in California contracts, this Court has confirmed that it is the language within the four corners of the integrated contract that a court must interpret, as opposed to a representation extrinsic to the agreement. *See Sussex Financial Enterprises, Inc. v. Bayerische Hypo-Und Vereinsbank AG*, 460 Fed. Appx. 709, 711-12 (9th Cir. 2011) ("Thus, the district court properly concluded that the credit agreement was a fully integrated agreement, and the parol evidence rule applies. . . . The contract in this case is unambiguous on its face. The district court properly excluded parol evidence."). The district court initially recognized the parol evidence bar here but curiously observed that, "under California law, when fraud or illegality is alleged 'the parol evidence rule does not apply, and evidence of precontract representations which vary or contradict the terms of an integrated contract are admissible.'" ER-8, n.4 (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1291 (9th Cir. 2006)) (citing Cal. Civ. Proc. Code § 1856)). But this observation was a complete *non-sequitur* because Bodenburg never alleged that enforcing the contractual terms would amount to an illegality or fraud. *Nagrampa* is plainly inapplicable here.

-33-

Here, the task at hand was for the district court to review the iCloud Legal Agreement and the price list referenced therein to interpret whether Section I.C of the iCloud Legal Agreement could plausibly be read, as Bodenburg did, to state that the amount of iCloud+ paid storage purchased would be provided in addition to the 5 GB of free iCloud storge the same agreement also provides all consumers are to receive before any such subscription purchase is made. Because the plain meaning of the phrase "[a]dditional storage" that Apple itself chose to make part of the iCloud Legal Agreement is susceptible to just that interpretation, it was error for the district court to have dismissed Bodenburg's claim.

### C. The District Court's End-Run Around The Parol Evidence Rule By Resort To Incorporation By Reference Of Ads Neither Bodenburg Nor The iCloud Legal Agreement Referenced Was Plainly Wrong.

The district court got around the parol evidence rule and the iCloud Legal Agreement's unambiguous integration clause by its incorrect resort to the doctrine of incorporation by reference. But the very authorities the district court cited for doing so show the error of the court's ways. Here, Bodenburg relied only on the iCloud Legal Agreement and the price list referenced in that agreement to state her breach of contract and statutory claims. She neither identified nor referenced any other document, advertisement, or website.

Despite this, the district court concluded that the extrinsic Apple ads about iCloud that Apple put before the court had been incorporated by reference into the

-34-

FAC because they were publicly posted and addressed the subject-matter about which Bodenburg complained. In the district court's view:

> The exhibits attached to the FAC, and the Powers' Declaration, are accessible on Apple's public website. The cloud storage plans, pricing, free cloud storage plan and additional features available for Apple customers and other consumers, including those receiving the free cloud storage plan, are prominently displayed on the website. ECF Nos. 36-3, 36-4, and 36-5. Together these exhibits, along with the FAC, show that Apple provides 5GB of free cloud storage in the free plan and that the paid plans start at 50GB per month. *Id*. More importantly, since this information is included in Plaintiff's allegations and incorporated by reference to support her claims that Apple violated the FAL, CLRA, and UCL, the Court may take both judicial notice and incorporate by reference of the exhibits.

ER-11:15-24 (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018))[1].

Though the district court cited this Court's opinion in *Khoja* in purported support of its decision to consider Apple's proffered website advertisements under the incorporation by reference doctrine, *Khoja* actually supports the opposite result. Here, Bodenburg's FAC identified only the iCloud Legal Agreement and the Apple price list specifically referenced within the iCloud Legal Agreement as the bases for all counts of her FAC. As *Khoja* explains, under these circumstances, a court may consider all parts of *those* documents as having been incorporated by reference into the complaint. But that is a far cry from ruling that because a plaintiff's pleading

---

[1] The district court's opinion cites an incorrect page for the *Khoja* opinion. The cite above contains the correct page number.

references a particular document, the defendant has the right to present *all other* documents pertinent to that subject-matter under the guise of them having been incorporated by reference and suitable for consideration in considering dismissal at the pleadings. As *Khoja* explained (but the district court misunderstood):

> The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of *those very documents* that weaken—or doom—their claims.

*Khoja*, 899 F.2d at 1002 (emphasis added).

Here, the website advertisements Apple presented and the district court accepted as incorporated by reference were not part of the very documents Bodenburg alleged in her FAC. They were wholly extraneous to the iCloud Legal Agreement. As *Khoja* further explained, even if such extraneous documents support a defendant's defense, they are not to be considered at the pleadings stage as having been incorporated by reference—they are instead evidence to be introduced at summary judgment or trial so they can be contradicted or rebutted with any contrary evidence the plaintiff may have (a task that cannot be undertaken on a Rule 12(b)(6) motion):

> However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims.

. . . .

> [I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading.

*Id.*, at 1002-03.

*Khoja* itself reversed a district court's dismissal of a complaint alleging securities violations precisely because in "dismissing the action, the district court abused its discretion by improperly considering materials outside the Complaint." *Id.*, at 994. As *Khoja* explained, the district court improperly considered as incorporated by reference a defendant's blog post that the complaint cited only in short fashion and did not rely on. *Id.*, at 1003; *see also In re Immune Response Sec. Litig.*, 375 F.Supp.2d 983, 995–96 (S.D. Cal. 2005) (cited in *Khoja*, 899 F.2d at 1002) (declining to incorporate many exhibits in SEC action where the complaint did not mention or rely on them, but the defendants instead "offer[ed] the documents as evidence that Defendants did not commit a securities violation"); *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 156–57 (2d Cir. 2006) (cited n *Khoja*, 899 F.2d at 1002-03) (finding error where the court relied on documents the complaint did not mention to resolve an issue in defendant's favor, even though the complaint had not raised the issue).

As *Khoja* teaches, the doctrine of incorporation by reference did not give the district court license to freely consider any and all Apple website advertisements dealing with the pricing or offering of iCloud or iCloud+ where the only document

-37-

Bodenburg's claims cited and relied on was the iCloud Legal Agreement and the Apple price list that the iCloud Legal Agreement referenced. The district court's misuse of the incorporation by reference doctrine to consider extraneous website advertisements was particularly inappropriate where the iCloud Legal Agreement's integration clause and preamble expressly forbade resort to such extrinsic evidence. That much is only buttressed by Apple's position that the iCloud Legal Agreement was unambiguous. *See* ER-67:13-14 ("Indeed, Apple's position (as set out above) is that the Agreement is unambiguous and bars Plaintiff's claims.").

Consideration of these documents as incorporated by reference at the pleadings stage resulted in the very dangers that *Khoja* cautioned district courts to avoid. Here, if it were proper to consider evidence extrinsic to the iCloud Legal Agreement to either assess Apple's defense or Bodenburg's case, Bodenburg would have had contrary evidence of her own to rebut or impeach any inference Apple tried to draw from its advertisements. Her FAC already alleged one such item, the custom in the industry, as shown by how Google advertised or represented its own free and paid cloud storage service and did so in a way that expressly recited that the paid-for storage limit amounted to the "total" storage to be afforded the consumer. This was language Apple did not provide in the iCloud Legal Agreement. As the California Court of Appeal has explained:

> Each party relies on different documents as evidence of the meaning of
> what he or she contends is the governing one. Such conflicting

> parol evidence on the meaning of an ambiguous term creates a question
> of fact.

*Leep v. American Ship Mgmt.*, LLC, 126 Cal. App.4ᵗʰ 1028, 1041 (2005).

By misapplying the incorporation by reference doctrine, the district court improperly let Apple rely on documents outside the pleading to make out what, at most, were facts supporting Apple's defense to Bodenburg's claims while barring Bodenburg from introducing contrary evidence, which could not be done in a Rule 12(b)(6) motion. All this stems from the district court's failure to interpret the plain and ordinary meaning of the actual language of the iCloud Legal Agreement. Its dismissal of Bodenburg's breach of contract claim should be reversed.

### D. The Main Authority The District Court Relied On For Its Ruling Is Wholly Inapplicable Here.

The district court compounded its error by looking for support for its contract interpretation decision to *Dinan v. Sandisk LLC*, No. 18-cv-05420-BLF, 2019 WL 2327923 (N.D. Cal. May 31, 2019), *aff'd* 844 Fed. Appx. 978 (9th Cir. 2021), a decision that this Court found did *not* involve a contract. Oblivious to that basic distinction, the district court explained that "[i]n another case, regarding a plaintiff's claim that they received less GB than what they expected, the Northern District found no breach of contract when there was a signal to look elsewhere to understand the GB being offered for the price paid." ER-14:12-16 (citing *Dinan*, 2019 WL 2327923, at *8).

-39-

Resort to *Dinan* was baffling because this Court actually held in *Dinan* that "[t]he complaint fails to state a claim for breach of contract. It does not make allegations sufficient to establish that Plaintiffs and SanDisk entered into a contract." *Dinan v. Sandisk LLC*, 844 Fed. Appx 978, 980 (9th Cir. 2021). Worse yet, *Dinan* hardly involved an integrated final contractual writing (which is the whole crux of this contractual dispute); it was merely a package labeling case. *Id*. Despite this glaring distinction, the district court cited and quoted at length from *Dinan* to support its dismissal of Bodenburg's breach of contract count. *See* ER-14:18 – ER-16:2 (quoting or citing *Dinan* at length as supporting its contractual interpretation here).

A case that does not even involve a formed contract cannot provide authority for arriving at the contractual interpretation the district court reached here. Further, the lack of an integrated contractual document in *Dinan* makes any attempt to apply that case to the facts of the fully integrated iCloud Legal Agreement at issue here an empty exercise. This Court has explained why the two circumstances could not be more different:

> Sullivan relies heavily on the one California case resembling the instant action. In *Brawthen v. H & R Block, Inc.*, 28 Cal.App.3d 131 (1972), the court held that the trial court erred in excluding parol evidence of an oral agreement that plaintiff would be terminated only for cause although the written contract appeared to provide for termination at will. *However, the written contract in Brawthen contained no integration clause. . . . In light of the importance of these factors under California law, Brawthen is not persuasive here.*

*Sullivan v. Massachusetts Mutual Life Ins. Co.*, 611 F.2d 261, 265 (9th Cir. 1979) (emphasis added).

Inexplicably, instead of looking to the litany of California authorities governing the interpretation of an unambiguous fully integrated contract, the district court relied for principal support on a decision that neither involved a contract nor, much less, a fully integrated agreement. The district court's flawed reasoning cannot stand.

### E. Even If The District Court Found The iCloud Legal Agreement's Language Ambiguous Or Susceptible To Several Interpretations, That Would Not Lead To Dismissal.

An added impediment to Apple's improper attempt to interpret the unambiguous iCloud Legal Agreement by misdirecting to Apple website advertisements is that Apple was the sole drafter of the Agreement. Any ambiguity in the iCloud Legal Agreement would not be resolved by resort to impermissibly extrinsic evidence but, instead, would be strictly construed against Apple. As the California Supreme Court explained, the party that drafts a fully integrated form contract cannot later claim a need to resort to extrinsic evidence to clarify a term in the contract it drafted and thereby urge a result favorable to it:

> Since the alleged ambiguities appear in a standardized contract, drafted and selected by the bank, which occupies the superior bargaining position, those ambiguities must be interpreted against the bank. ***The rule of resolving ambiguities against the drafter 'does not serve as a mere tie-breaker; it rests upon fundamental considerations of policy.'*** Thus, in determining whether an instrument is reasonably susceptible

to an interpretation suggested by the extrinsic evidence, one factor for consideration by the court is whether that interpretation would do violence to the principles of construing documents against the party who drafts and selects them.

In the present case, ***we conclude that to permit a creditor to choose an allegedly ambiguous form of agreement, and then by extrinsic evidence seek to give it the effect of a different and unambiguous form, would be to disregard totally the rules respecting interpretation of adhesion contracts, and to create an extreme danger of over-reaching on the part of creditors with superior bargaining positions. The bank must bear the responsibility for the creation and use of the assignment it now claims is ambiguous; it is only 'poetic justice' (CEB, s 2.38) if such ambiguity is construed in favor of the borrower.***

*Tahoe Nat'l Bank v. Phillips*, 4 Cal.3d 11, 20 (1971) (emphasis added); *see also*

*Congdon v. Uber Tech Inc.*, 291 F. Supp.3d 1012, 1024, n. 14 (N.D. Cal. 2018)

(italics in original) ("The rule of contract interpretation that ambiguous terms in a

contract must be construed against the drafter applies "with peculiar force" in the

case of standard form contracts.").

The iCloud Legal Agreement's language is plain, unambiguous and fully

supportive of Bodenburg's claim:

Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages. *Additional storage* is available for purchase, as described below.

ER-126, ¶ I.C (emphasis added) (quoted in ER-103, ¶ 5).

And the Agreement directs the consumer to a specific Apple page to discern

the pricing for this "additional storage." *See* ER-131, ¶ III.A. (identifying price list).

(Pricing can refer only to what is being paid for the additional storage and added

-42-

features since the base 5 GB of storage is provided for free to all without payment or subscription). Apple now admits, however, that the way it performs the contract is that the storage it sells "is not accumulative." ER-90:24-25. What Apple effectively does is to misread the Agreement as stating the following (which it plainly does not):

> Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages. Instead of that allocation of storage capacity, you may elect to purchase the following subscription plans that will provide the following total storage amount for their respective prices.

Apple, the largest and arguably most sophisticated public company on the planet with a cadre of lawyers at its disposal, could have drafted the Agreement in the foregoing way to provide what it now claims it means. But it did not do so. "[W]hen the language of a contract is plain and unambiguous it is not within the province of a court to rewrite or alter by construction what [the parties have] agreed upon." *Crow v. P.E.G Construction Co.*, 156 Cal. App.2d 271, 278 (1957) (quoted in *Ramirez v. Charter Communications, Inc.*, 551 P.3d 520, 537 (Cal. 2024)). Yet, that is what the district court did. It rewrote the iCloud Legal Agreement to conform to what the district court believed Apple meant to convey through its website advertisements. That was error.

-43-

### F. Regardless, Even The Apple Advertisements Impermissibly Considered By The District Court Do Not Lead To Dismissal.

The district court erred by interpreting the Apple website advertisements instead of the Apple iCloud Legal Agreement. Even if that initial error could be overlooked, however, it would not safeguard the district court's ruling. Even the Apple website advertisements that Apple and the district court relied on over the iCloud Legal Agreement do not say what the district court concluded they said, much less do they do so in any incontrovertible manner as would be required to dismiss the FAC at the pleadings stage. All the website advertisements provide are a chart showing the iCloud or iCloud+ cloud storage levels Apple would provide in exchange for payment for each iCloud+ subscription tier. The chart also shows the 5 GB of cloud storage space Apple provides for free to all Apple device owners under its iCloud service offering.

Nothing in the advertisement, however, remotely represents that by selecting to subscribe to a particular iCloud+ subscription tier, Apple would remove the 5 GB of free cloud storage it was already providing to that subscriber for free. So when a subscriber like Bodenburg, who had 5 GB of free cloud storage for her iPhone device already, was informed by Apple's ads that she could pay $2.99 per month in exchange for 200 GB of storage, nothing in the ad informed her, much less in unambiguous fashion, that once she bought those 200 GB for $ 2.99, she would have

the 5 GB of free storage that she already was receiving taken away. Yet, that is exactly what happened.

If the 200 GB of storage is "not accumulative" to the 5 GB of free storage Bodenburg already was receiving from Apple all along, then the $2.99 she was paying would actually be in exchange for only 195 GB (because the 5 GB had already been hers). The bottom line is that the advertisements should not have trumped the plain language of the iCloud Legal Agreement. Even if the advertisements were considered, however, they hardly should have resulted in dismissal at the pleadings stage because the ads' content did not communicate that which Apple would need them to convey to secure dismissal. Either way, the district court's ruling was wrong and should be reversed.

## II. DISMISSAL OF BODENBURG'S STATUTORY CLAIMS WAS ERROR.

Using the same approach as it did in dismissing Bodenburg's breach of contract claim, the district court also dismissed with prejudice all of Bodenburg's derivative statutory claims under the CLRA, FAL, and UCL. *See* ER-16:7 – ER-19:2. As it did with the breach of contract count, the district court referred not to the contract language (which is what Bodenburg based her CLRA, FAL, and UCL claims on) but to the extrinsic website ads that Apple placed before it. The district court then interpreted those ads as conveying the amount of storage Bodenburg would receive if she paid for each iCloud+ subscription tier. Because Apple

-45-

provided that storage amount, the Court found there was no falsity, deception, or statutory violation:

> A reasonable consumer would not think *from those advertisements*, that there is an option to have two plans (a free one and a paid one), or that they will get 5GB of storage on top of the indicated amount of storage *in the advertisements*, or that the GB advertised included the free 5GB plan from which they were upgrading.

ER-18:26 – ER-19:2 (emphasis added).

The district court went further and held that Bodenburg's statutory claims could not meet the required "reasonable consumer" test, which asks "[w]ould a reasonable consumer have been misled." ER-17:24-25 (quoting *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 612, *reconsideration denied*, 2018 WL 5793479 (N.D. Cal. 2018)). Without citing any cannons of contract interpretation, the district court summarily concluded that, "neither the Written Agreement nor the plans and pricing information she accessed through the link indicated that upon upgrading she would still get the free 5GB of cloud storage." ER-18:4-6. (Of course, Bodenburg alleged and argued just that in resorting to the plain meaning of the contractual term in Section I.C of the Agreement "[a]dditional storage" to mean storage "in addition to" or "supplementary to" the 5 GB of iCloud storage she already had for free).

The district court then turned to the Apple advertisements that Apple had placed before it—advertisements that neither the FAC nor the fully integrated iCloud

Legal Agreement referenced nor Bodenburg's FAC identified—to conclude that these extraneous "Exhibits show that during the relevant period, there were multiple options for consumers to choose from for their cloud storage plan, which reinforces that upon upgrading consumers do not receive 5GB of free cloud storage anymore." ER-18:22-24. Thus, the district court's dismissal was with prejudice and without leave to amend.

**A. The District Court Erred In Its Application Of The "Reasonable Consumer" Test To The CLRA, FAL, and UCL Claims.**

Whatever doubt may have existed about the correctness of the district court's ruling as to the statutory claims and the "reasonable consumer" test was dispelled just last month when this Court decided *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771 (9th Cir. 2024). In *Whiteside*, the class plaintiffs alleged violations of the CLRA, FAL, and UCL based on the package labeling of the defendant's baby wipe products. The front of the packaging represented that the product was "Plant Based" when it was alleged that the wipes had synthetic ingredients. *Id.*, at 776. The district court dismissed the complaint with prejudice after finding that the "reasonable consumer" test could not be met because the back side of the product's same packaging had a disclaimer in all capital letters: "NATURAL AND SYNTHETIC INGREDIENTS." *Id.*

This Court reversed.  Before delving into the district court's incorrect conclusion as to the "reasonable consumer" test, this Court canvassed its earlier decisions and offered the following cautionary note:

> 'California courts ... have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage].'  Likewise, in federal court, dismissals of UCL, FAL, and CLRA claims at the pleadings stage have 'occasionally been upheld,' *but such cases are 'rare.*  Dismissal is appropriate when the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived.

*Id.*, at 778 (citations omitted, emphasis added).

Turning next to the "reasonable consumer" test, this Court explained why providing disclaiming or additional information on the back label of a product does not absolve a defendant from liability for representations made on the front of its packaging:

> Placing a disclaimer or a fine-print ingredients list on a product's back label does not necessarily absolve a defendant of liability for deceptive statements on the front label.  In the seminal case *Williams*, the defendant sold a product called 'Fruit Juice Snacks' that displayed images of various fruits on its front label. *Id.* at 936. The product's side-label ingredients list disclosed that it contained none of the pictured fruits and that the only fruit-related ingredient was white grape concentrate. *Id.*  We reversed dismissal of the plaintiff's UCL and CLRA claims because we 'disagree[d] with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.'

*Whiteside*, 108 F.4th at 778 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 936, 939 (9th Cir. 2008)); *see also Brady v. Bayer Corp.*, 26 Cal. App.5th 1156,

1174 (2018) (rejecting "the assumption that reasonable consumers of vitamins are back-label scrutinizers.").

If a reasonable consumer is not expected to scrutinize the back label of the packaging when she reads the front packaging label of the same product to obtain clarity, it is even more implausible to expect Apple customers who reviewed the fully integrated iCloud Legal Agreement and its linked Apple price list to go searching for advertisements about iCloud and iCloud+ that are nowhere referenced in the Agreement and that Apple may have placed on a different webpage.

**B. The District Court Erred In Incorporating By Reference The Extrinsic Apple Advertisements And Relying On Them To Dismiss The Statutory Claims.**

Even before derailing the district court's "reasonable consumer" test application, *Whiteside* faulted the district court for a more basic reason that is equally applicable here. This Court held it improper for the district court to have even considered the back label of a package at the pleadings stage when the plaintiff had not identified, relied on, or quoted that back label. It found that incorporating by reference the contents of the back label, as the district court had done, to have been improper:

> Contrary to Defendant's suggestion, our cases affirm that a front label is not ambiguous simply because it is susceptible to two possible meanings; a front label is ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation. Only in

-49-

these circumstances can the back label be considered at the dismissal stage.

*Whiteside*, 108 F.4th at 781.

Here too there was no finding of ambiguity of the iCloud Legal Agreement, and Apple disclaimed any such ambiguity. *See* ER-67:13-14. Under *Whiteside* then, there was no basis to consider the wholly extraneous Apple website advertisements. The case for that exclusion is much stronger than in *Whiteside*. In *Whiteside*, the separate disclaimer label was found on the same packaging that formed the basis of the plaintiffs' claims. Still, this Court held it was improper to consider the back label contents as having been incorporated by reference. *Id.*, at 782. Here, the advertisements Apple and the district court relied on are separate documents from the iCloud Legal Agreement or price list that Bodenburg's FAC relied on and cited. If incorporation by reference was improper for the back-of-the-package label in *Whiteside*, it was even more so for the wholly distinct Apple advertising webpages here.

### C. The District Court's Conclusion That Bodenburg Failed To Meet Heightened Pleading Standards Also Was Wrong.

The district court also dismissed Bodenburg's statutory claims after ruling Bodenburg did not meet the heightened pleading standard when alleging her CLRA, FAL, or UCL counts. *See* ER-16:9 – ER-17:17. But its reasoning for concluding as

-50-

much was based on the same flawed premise that incorrectly led the district court to

dismiss the breach of contract action.  As the district court incorrectly reasoned:

> Moreover, the FAC does not state any facts showing that there are any false statements in the Written Agreement, the Terms of Service (Exh. 1 to FAC), or the plans and pricing information (Exh. 2 to FAC).  The aforementioned terms are available through the link in the Agreement specifically stating the amount of storage and the price for that amount of storage.

> There is no question the amount of storage Plaintiff paid for her upgraded plan is more storage than the free 5GB of storage that Plaintiff had been receiving by default through her free  plan.  See ECF No. 34 (FAC); see also ECF No. 34-1 (Exh. 1 to FAC), at 7.  Since the GB listed in the plans and pricing is more storage than the free 5GB, Plaintiff cannot point to any to any false statements Apple made.

> Consequently, the heightened pleading standard is not met and the FAC fails to state sufficient facts for any of the consumer protection claims.

ER-17:1-13.

That was wrong.  Bodenburg alleged: what service she bought from Apple and

at what price (the middle tier iCloud+ plan for $2.99, *see* ER-106 – ER-107, ¶ 19);

what part of the iCloud Legal Agreement was false or misleading (Section I.C of the

iCloud Legal Agreement); why it was so (because Apple shortchanged her by 5 GB

in not providing the iCloud+ storage as "additional storage" to the iCloud storage

Bodenburg already had for free (*see* ER-107, ¶ 19)); and, how she sustained harm

(by not receiving the full value of what Apple promised to deliver).  As *Whiteside*

clarified, those allegations amply meet the requisite pleading standard:

-51-

> Defendant contends that Plaintiff failed to 'particularly plead[ ] the *what* as part of the who, what, when, where, and how of the misconduct charged' because Plaintiff 'never specifies which, if any, of the dozens of images in her complaint corresponds to the package *she* saw in store [sic] and purchased.'

> Defendant is incorrect. Plaintiff's complaint states that Plaintiff purchased 'Huggies Natural Care® Baby Wipes (Sensitive) in 56 count size' at Target. The complaint refers to an exhibit that features an image of the label Plaintiff saw. There are indeed dozens of labels in the record because this is a putative class action, but Plaintiff's complaint sufficiently alleges the particular label she herself saw.

*Whiteside*, 108 F.4th at 785.[2]

Even if one could assume that Bodenburg missed a particularized pleading necessary to meet the heightened pleading standard, the district court never explained why leave to amend to include such a detailed allegation was denied.

## **CONCLUSION**

For the foregoing reasons, the district court's order dismissing with prejudice all counts of Appellant's First Amended Complaint should be reversed.

---

[2] Bodenburg also pled when she made her purchases of iCloud+ (during the entirety of the Class Periods). *See* ER -107; ¶ 20; *see also* ER-114, ¶ 37 (detailing the precise months and years making up the class periods for each of Bodenburg's claims). That plainly sufficed, and even if it had not, there is no basis for the district court to have denied Bodenburg leave to amend to add any missing temporal allegation.

Dated: August 21, 2024

Respectfully submitted,

/s/ Roy A. Katriel
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Rd., Suite 201
Del Mar, CA 92014
Telephone: (619) 363-3333
e-mail: rak@katriellaw.com

Ralph B. Kalfayan
Ian D. Krupar
**THE KALFAYAN LAW FIRM**
2262 Carmel Valley Road, Suite 200
Del Mar, CA 92014
Telephone: (619) 232-0331
e-mail: ralph@rbk-law.com
          ian@rbk-law.com

*Counsel for Appellant Lisa Bodenburg*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-3335

I am the attorney or self-represented party.

**This brief contains** 12,517 **words,** including 338 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Roy A. Katriel    **Date** 08/21/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**    *Rev. 12/01/22*

-54-